UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § | |
| as Broadcast Licensee of the | § | |
| November 12, 2011 Manny Pacquiao v. | § | |
| Juan Manuel Marquez Championship | § | |
| Fight Program, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-3964-B |
| | § | |
| RITA CATALINA TORRES, also | § | |
| known as RITA C. TORRES, also known | § | |
| as RITA TORRES, d/b/a PIRATA'S | § | |
| RESTAURANT, also known as | § | |
| PIRATAS RESTAURANT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Final Default Judgment (doc. 7), filed by Plaintiff J&J Sports

Productions, Inc. on March 3, 2015. Plaintiff seeks a default judgment on its claims against

Defendant Rita Catalina Torres[1] d/b/a Pirata's Restaurant.[2] For the reasons that follow, the Motion

is **GRANTED in part** and **DENIED in part**.

## I.

## BACKGROUND

This case involves claims under the Federal Communications Act of 1934, as amended, 47

---

[1] Defendant Rita Catalina Torres is also known as Rita C. Torres and Rita Torres.

[2] Pirata's Restaurant is also known as Piratas Restaurant.

U.S.C. §§ 553 and 605 (the "FCA"). Plaintiff J&J Sports Productions, Inc. markets and licenses closed-circuit, pay-per-view prizefighting events to be viewed at commercial establishments. Doc. 10-1, Pl.'s Ex. A, Affidavit of Thomas P. Riley ("Riley Aff."), App. 6. Plaintiff acquired the proprietary rights to exhibit and sublicense the right to exhibit the November 12, 2011 broadcast "Manny Pacquiao v. Juan Manuel Marquez Championship Fight Program," including undercard or preliminary bouts (the "Event"). Doc. 1, Compl. ¶¶ 1, 5. Plaintiff marketed and distributed exhibition rights to the Event to commercial locations throughout Texas in exchange for a fee. *Id.* at ¶¶ 5, 7. To prevent unlicensed establishments from exhibiting the Event, the transmission was electronically coded or "scrambled," and establishments that had obtained the necessary license to broadcast the Event were provided with electronic decoding equipment. *Id.* at ¶¶ 8–10. Plaintiff alleges that Defendant did not contract to obtain the rights to broadcast the Event. *Id.* at ¶ 11. According to Plaintiff, Defendant nonetheless broadcasted the Event to patrons of her establishment, Pirata's Restaurant, on November 12, 2011. *Id.*

Plaintiff filed the present case on November 8, 2014, asserting that Defendant willfully violated the FCA for commercial gain. *Id.* at ¶¶ 12–17. Plaintiff thus maintains that it is entitled to an award of statutory and additional damages pursuant to the FCA, a permanent injunction enjoining Defendant from intercepting or exhibiting future programs without a license to do so, as well as court costs, attorney's fees, and pre- and post-judgment interest. *Id.* at 4–5.

Defendant was served with process on December 10, 2014, but did not answer or otherwise respond by the appropriate deadline. Doc. 5, Return of Service. Accordingly, Plaintiff requested an entry of default as to Defendant on March 3, 2015, which the Clerk of Court entered the following

day. Docs. 6, Request for Clerk to Issue Entry of Default; 8, Entry of Default. Also on March 3, 2015,

Plaintiff filed the present Motion for Final Default Judgment (doc. 7) against Defendant. To date,

Defendant has not made an appearance in this case.

## II.

## LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to

enter a default judgment against a defendant who has failed to plead or otherwise defend upon

motion of the plaintiff. Fed. R. Civ. P. 55(a)–(b). That being said, "[d]efault judgments are a drastic

remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun

Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not

entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*,

75 F.3d 207, 212 (5th Cir. 1996). "Rather, a default judgment is generally committed to the

discretion of the district court." *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548

F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts

have developed a three-part analysis. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548

F. Supp. 2d at 384. First, courts consider whether the entry of default judgment is procedurally

warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this

inquiry include:

> [1] whether material issues of fact exist; [2] whether there has been substantial
> prejudice; [3] whether the grounds for default are clearly established; [4] whether the
> default was caused by a good faith mistake or excusable neglect; [5] the harshness of
> a default judgment; and [6] whether the court would think itself obliged to set aside

the default on the defendant's motion.

*Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). In doing so, courts are to assume, that due to its default, defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* However, "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.

## ANALYSIS

A.    *Whether the Entry of Default Judgment Is Appropriate*

After reviewing Plaintiff's Motion in light of the six *Lindsey* factors, the Court determines that default judgment is procedurally warranted. First, Defendant has not filed any responsive pleadings. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded

allegations of fact."). Indeed, Defendant's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). In addition, there is no evidence before the Court to indicate that Defendant's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Moreover, Defendant's failure to respond to Plaintiff's Complaint for the past seven months "mitigat[es] the harshness of a default judgment." *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013); *see also Elite v. KNR Group*, 216 F.3d 1080, 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining that failure to appear was due to financial privation). Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendant.

B.     *Whether There Is a Sufficient Basis for Judgment in the Pleadings*

    In light of the entry of default, Defendant is deemed to have admitted the allegations set forth in Plaintiff's Complaint. Nonetheless, the Court must review the pleadings to determine whether they present a sufficient basis for Plaintiff's claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206. In conducting this analysis, the Fifth Circuit has looked to the Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual allegations" are not required,

but the pleading must present "more than an unadorned, the-defendant-unlawfully-
harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

Plaintiff alleges that Defendant "willfully intercepted and/or received the interstate
communication of the Event," or, alternatively, "assisted in the receipt of the interstate
communication of the Event." Compl. ¶ 11. Plaintiff then avers that Defendant "transmitted,
divulged and published [the Event] . . . to patrons within [Defendant's establishment]." *Id.*
Moreover, Defendant allegedly "infringed upon Plaintiff's exclusive rights" to broadcast the Event
"willfully and with the express purpose and intent to secure a commercial advantage and private
financial gain." *Id.* at ¶ 12. Plaintiff insists that through these acts, Defendant violated 47 U.S.C. §§
553 and 605. *Id.* at ¶¶ 16–17.

A person violates 47 U.S.C. § 605 when he "intercept[s] any radio communication . . . or
receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such
communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C.
§ 605(a). Similarly, one violates 47 U.S.C. § 553 by "intercept[ing] and receiv[ing] or assist[ing] in
intercepting or receiving any communications service offered over a cable system" without
authorization. *Id.* § 553(a)(1). The unauthorized interception of satellite or cable transmissions
violates both Sections 553 and 605. *Entm't by J & J, Inc. v. Al-Waha Enters.*, 219 F. Supp. 2d 769, 774
(S.D. Tex. 2002). Here, Plaintiff's Complaint indicates that the Event was transmitted via an
"electronically coded or 'scrambled'" satellite signal, and that Defendant intercepted the Event
without authorization, exhibiting it to patrons of her establishment for her own commercial benefit.
Compl. ¶¶ 8–15. After review, the Court concludes that these allegations state a viable claim for

relief and are sufficient to provide Defendant with "fair notice" of Plaintiff's claim that Defendant "transmitted, divulged and published [the Event] . . . to patrons within [Defendant's establishment]" in violation of the FCA.

C.      *Damages*

       "A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages." *Ins. Co. of the W.*, 2011 WL 4738197, at *4 (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 521, 524–25 (5th Cir. 2002)). Damages must be proven by a hearing or a demonstration of detailed affidavits establishing the necessary facts. *See United Artists Corp.*, 605 F.2d at 857. If the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James*, 6 F.3d at 370.

       A party aggrieved by a violation of Section 605 may elect to receive either actual damages or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Statutory damages for each violation of the section must be awarded in an amount no less than $1,000 and no more than $10,000, as the Court finds just. *Id.* § 605(e)(3)(C)(i)(II). If the Court finds that a violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may, in its discretion, increase the damage awarded by an amount of not more than $100,000. *Id.* § 605(e)(3)(C)(ii). An aggrieved party who prevails shall receive full costs, including reasonable attorney's fees. *Id.* § 605(e)(3)(B)(iii).

       1.      <u>Statutory Damages</u>

       Plaintiff maintains that "it would be impossible to determine the full extent of the profits" it lost and "the additional damages sustained . . . as a result of Defendant's unlawful actions." Doc. 7,

Pl.'s Mot. for Final Default J. ("Pl.'s Mot.") 5. Thus, Plaintiff requests statutory rather than actual damages, seeking an award of $10,000—the statutory maximum—against Defendant.[3] *Id.* at 4–5. Plaintiff specifies that Defendant's actions have led it to lose revenue and have deprived it of the "'value, benefits and profits derived' from the unauthorized broadcast of the Event . . . as well as the value of 'business investment, business opportunities and goodwill.'" *Id.* at 5 (quoting *Am. Television & Commc'ns. Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D. Fla.1986)). In support of its request for damages, Plaintiff presents the affidavit of Thomas P. Riley, whose firm was charged with "the discovery, investigation and prosecution of claims arising from the theft or piracy of . . . [the Event]." Pl.'s Ex. A, Riley Aff., App. 5. In his affidavit, Riley avers that Defendant's actions threaten the existing and ongoing viability of Plaintiff's company. *Id.* at App. 7–9. By broadcasting programming without complying with the required licensing process, establishments like Defendant's are able to charge their patrons no fee or a fee less than what authorized establishments are required to charge. *Id.* at App. 8–9. Thus, establishments that lawfully broadcast programs lose business and patrons and, as a result, lose the ability to contract with Plaintiff in order to obtain license to broadcasts. *Id.* In sum, Plaintiff alleges that Defendant's actions caused it to suffer damage to its goodwill, reputation, and right and ability to control and receive fees for the transmission of programs. *Id.*

Courts have assessed various amounts in statutory damages for violations similar to those presented here. *See Joe Hand Promotions, Inc. v. Alima*, No. 3:13-CV-0889-B, 2014 WL 1632158, at

---

[3] The Court notes that Plaintiff cannot recover under both Sections 553 and 605, even if it can be demonstrated that Defendant violated both. *Al-Waha Enters.*, 219 F. Supp. 2d at 775. Therefore, the inquiry as to damages will only be based on a discussion of Section 605, as it allows Plaintiff a greater recovery. *Id.*

*4 (N.D. Tex. Apr. 22, 2014) (awarding base statutory damages in the amount of $5,000); *J & J Sports Prods., Inc. v. Beck*, No. L-13-57, 2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013) (same); *J & J Sports Prods., Inc. v. Q Café, Inc.*, No. 3:10-CV-2006-L, 2012 WL 215282, at *5 (N.D. Tex. Jan. 25, 2012) (awarding base statutory damages in the amount of $10,000); *Al-Waha Enters.*, 219 F. Supp. 2d at 776 (awarding base statutory damages in the amount of $5,000). In light of the need to deter future violations, and considering the fact that the sublicensing fee here would have been approximately $2,200 had Defendant paid to lawfully broadcast the Event, the Court determines that statutory damages in the amount of $5,000 is reasonable. *See* Pl.'s Ex. A-3, Rate Card; *see, e.g.*, *Al-Waha Enters.*, 219 F. Supp. 2d at 776 ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the event does nothing to accomplish this object [to deter future violations of the FCA]."). The Court therefore **GRANTS** Plaintiff's request for statutory damages and awards Plaintiff the sum of $5,000.

    2.    <u>Additional Damages</u>

Plaintiff further requests $50,000 in additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) based on its allegation that Defendant's actions "were willful and 'for purposes of direct or indirect commercial advantage or private financial gain.'" Pl.'s Mot. 6. Plaintiff does not present evidence to demonstrate that Defendant willfully violated the FCA, but it insists that Defendant could not have "innocently" accessed the broadcast of the Event given the complexity of intercepting transmissions. *Id.* at 7. Courts have generally found this reasoning to be persuasive given the limited means by which defendants can access closed-circuit, pay-per-view events and the unlikelihood that an establishment could intercept such broadcasts by chance. *See Al-Waha Enters.*,

219 F. Supp. 2d at 777 (finding willfulness given the "limited methods of intercepting closed circuit broadcasting of pay-per-view events" and "the low probability that a commercial establishment could intercept such a broadcast merely by chance"); *Q Café, Inc.*, 2012 WL 215282, at *5 (citing *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.")). Based on this line of cases, the Court likewise concludes that the evidence and allegations presented by Plaintiff are sufficient to support a finding of willfulness.

Moreover, the record indicates that Defendant exhibited the Event for purposes of direct or indirect commercial gain. The Event was exhibited to approximately three patrons of Defendant's establishment. Pl.'s Ex A-2, Affidavit, App. 20–21.[4] While there is no indication that the establishment charged a cover for admission, it did sell food and beverages to its patrons. *Id.*; Pl.'s Mot. 8. Courts have found this fact persuasive in establishing a commercial motive. *See Beck*, 2013 WL 5592333, at *2 (finding commercial motive based on the fact that "patrons purchased food and/or drinks while viewing the Event" and because "it is obvious that commercial establishments show sports programs to draw business, not out of charity."). This Court similarly finds sufficient evidence and allegations to establish Defendant's motive.

The FCA allows "the court, in its discretion," to "increase the award of damages, whether actual or statutory, by an amount of not more than $100,000" for willful violations. 47 U.S.C. §

---

[4] In his affidavit, the individual investigating Defendant's establishment indicates that the boxing event "Bredis Prescott v. Mile Alvarado" was exhibited on the establishment's television on the evening of November 12, 2011. Pl.'s Ex. A-2, Affidavit, App. 20. In its Complaint, Plaintiff explains that this particular fight was one of the bouts for the Event that is the subject of this litigation. *See* Compl. 3 n.1.

605(e)(3)(C)(ii). However, courts have varied in their approaches to determining the proper amount to award in cases similar to the present one. *See, e.g., Alima*, 2014 WL 1632158, at *5 (awarding additional damages in the amount of four times the statutory base award where defendant charged a cover and showed the event on nine screens to approximately 85 to 125 patrons); *Q Café, Inc.*, 2012 WL 215282, at *5 (awarding additional damages in the amount of five times the statutory base award, citing the location of the broadcast in an urban area and the importance of deterring future violations); *Beck*, 2013 WL 5592333, at *3 (awarding additional damages in the amount of three times the base because defendant did not charge a cover charge, only thirty patrons viewed the event, and defendant was not a repeat offender); *Al-Waha Enters.*, 219 F. Supp. 2d at 777 (awarding triple damages for a willful violation); *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 960 (E.D. Wis. 2001) (awarding five times the base statutory amount because defendant advertised the event, charged a cover, and showed the event on five television monitors). Here, Plaintiff provides evidence of the auditing visit during which Defendant's violation was observed. Pl.'s Ex. A-2, Affidavit App. 20–21. The evidence demonstrates that Defendant's establishment displayed the Event on one screen, and that only two to three patrons were in attendance. *Id.* Moreover, there is no indication that Defendant charged these patrons a cover or that it advertized the broadcast of the Event to attract a greater audience. *Id.* Based on the damages awarded by other courts, the evidence currently before the Court (which reveals that only approximately three patrons were present at Defendant's establishment), and the need to deter future violations, the Court finds that additional damages in the amount of $1,000 is reasonable. Thus, the Court **GRANTS** Plaintiff's request for additional damages and awards Plaintiff the sum of $1,000.

3. <u>Attorney's Fees and Costs</u>

Under the FCA, the Court is required to order the recovery of full costs, including attorney's fees, to an aggrieved party who prevails. 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff seeks a one-third contingent fee or, alternatively, attorney's fees in the amount of $1,000. Pl.'s Mot. 9; Pl.'s Ex. B, Affidavit of David M. Diaz ("Diaz Aff."), App. 27–30. Plaintiff presents the affidavit of its counsel, David M. Diaz, in which he estimates his fee to be $1,000 for his time and work on this case. Pl.'s Ex. B, Diaz Aff., App. 29–30. This sum is based on a rate of $250 per hour and approximately four hours of work. *Id.* Given this estimate, as well as the evidence and circumstances of the case, the Court finds Plaintiff's request for $1,000 in attorney's fees to be more reasonable than a one-third contingency fee.

The Fifth Circuit has described the procedure and standard for determining attorney's fees as follows:

> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012) (quoting *Jimenez v. Wood Cnty*, 621 F.3d 372, 379–80 (5th Cir. 2010)). The *Johnson* factors are (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the

result obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

Although Plaintiff has not offered invoices or other evidence supporting the number of hours its attorney worked on this case, the Court accepts as reasonable Mr. Diaz's estimate of his time and rates given his experience with anti-piracy cases as well as the authorities he provides. Pl.'s Exs. B, Diaz Aff., App. 26–28; B-2, Texas Lawyer's Annual Salary & Billing Report, App. 39–46. Accordingly, the Court makes no adjustment to these figures and **GRANTS** Plaintiff's request for $1,000 in attorney's fees.[5]

Though Plaintiff is entitled to recover costs pursuant to this action, it has neglected to specify the amount of costs it seeks to recover. Moreover, Plaintiff does not provide any evidence establishing the costs it has incurred. As the Court is unable to determine the sum of the costs sought or the manner in which such a sum can be computed, it **DENIES** Plaintiff's request for costs at this time. Plaintiff may, however, provide supplementary briefing and evidence establishing the amount of costs it seeks.

4.    Permanent Injunction

Lastly, Plaintiff requests a permanent injunction against Defendant to prevent her "from ever

---

[5] In its proposed order, Plaintiff also includes several conditional grants of attorney's fees for potential post-judgment and appellate work. Doc. 7-2, Proposed Order 2. Although Plaintiff does not expound upon this request in its Motion, the affidavit of its counsel, David Diaz, lists various requests for fees that are contingent upon the occurrence of post-judgment events. *See* Pl.'s Ex. B, Diaz. Aff., App. 31–32. For example, Plaintiff seeks a conditional award of $10,000 to be granted should Defendant file a "post-judgment, pre-appeal motion," such as a motion to vacate. *Id.* Because this Court has granted reasonable attorney's fees for the work actually performed, and because Plaintiff has presented no argument or evidence establishing the reasonableness of these additional contingent fees, the Court denies this request.

- 13 -

intercepting or exhibiting an unauthorized program in violation of the [FCA]." Pl.'s Mot. 10. Under the FCA, a court may grant a final injunction "on such terms as it may deem reasonable to prevent or restrain violations" of the Act. 47 U.S.C. § 605(e)(3)(B)(i). However, Plaintiff provides no explanation supporting its request for such relief. Additionally, the Court finds such an injunction is unnecessary to the extent it is merely intended to prevent Defendant from violating the FCA. The Court therefore **DENIES** Plaintiff's request for a permanent injunction.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Final Default Judgment (doc. 7). In particular, the Court:

- **GRANTS** Plaintiff's requests for statutory damages in the amount of $5,000 and for additional damages in the amount of $1,000, for a total award of $6,000;

- **GRANTS** Plaintiff's request for attorney's fees in the amount of $1,000;

- **DENIES** Plaintiff's request for costs of court, pending supplementation of the record;

- **GRANTS** Plaintiff's request for post-judgment interest at the rate of 0.33% on all amounts awarded herein; and

- **DENIES** Plaintiff's request for a permanent injunction.

If Plaintiff is able to provide supplementary briefing and evidence in support of its request for court costs, it is **ORDERED** to do so by **September 2, 2015.**

SO ORDERED.

SIGNED: August 5, 2015.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE